UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20029-CR-ZLOCH

UNITED STATES OF AMERICA,

        Plaintiff,

v.

LEANDRO ACOSTA,
YIRIAM ACOSTA, and
JOSE RAMON REYES,

        Defendants.
_____/

**ORDER**

This matter is before the Court upon Defendant Leandro Acosta's Motion to Sever [D.E. 125], Defendant Reyes's Motion to Sever [D.E. 129], and Defendant Yiriam Acosta's Motion to Adopt Co-defendant Leandro Acosta's Motion to Sever [D.E. 133] (collectively, "Defendants' Motions"), upon referral by the Honorable William J. Zloch. *See* D.E. 127, D.E. 131, & D.E. 134. The Court has carefully reviewed Defendants' Motions, all filings in support thereof and in opposition thereto, and the record. In addition, the Court has heard argument on Defendants' Motions on March 19, 2012. After careful consideration, the Court now denies Defendants' Motions for the reasons set forth below.

***I. Background***

Defendants, along with others, are charged by way of indictment with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. *See* D.E. 2. In addition, the indictment alleges that Defendants engaged in substantive health care fraud, in violation of 18 U.S.C. § 1347. *See id.*

Defendants have moved to sever their trial from that of Co-defendant Jose Antonio Acosta, who happens to be the brother of Defendant Leandro Acosta and the husband of Defendant Yiriam Acosta. The FBI 302 report of Defendant Jose Antonio Acosta's post-*Miranda* statement indicates that Defendant Jose Antonio Acosta made statements implicating himself and some of his Co-defendants in the activity charged in the Indictment. *See* D.E. 135-1. Citing a *Bruton* problem,[1] Defendants complain that allowing Defendant Jose Antonio Acosta's post-*Miranda* statements to be used at a trial against Defendants would violate Defendants' Sixth Amendment right to confrontation of the witness.

In response, the Government proposes to redact the allegedly offending statement as follows:

| **Unredacted Statement** | **Redacted Statement** |
| --- | --- |
| Jose Antonio Acosta ("JAA") went to Gilberto Last Name Unknown's ("LNU") company with Rey LNU, and possibly his brother Leandro Acosta ("Leandro"). Initially [JAA] stayed in the hallway, and Rey LNU went in to talk to Gilberto LNU. He did not know what they discussed. Then he went into Gilberto LNU's office, and the conversation began about Hallandale Medical Supply, Inc. ("Hallandale") and Miguel A. Rodriguez. | [JAA] went to Gilberto LNU's company. Once inside Gilberto LNU's office, a conversation began about Hallandale Medical Supply, Inc. ("Hallandale") and Miguel A. Rodriguez. |

---

[1]*Bruton v. United States*, 391 U.S. 123 (1968).

| | |
|---|---|
| Approximately one to two months later, JAA lent Rodriguez approximately $10,000 to $15,000, or possibly more, for the sale of Hallandale. Present at the sale were [JAA], Leandro, Rodriguez, Rey LNU, and Gilberto LNU. During the purchase transaction, the business was put in the name of Rodriguez. At the meeting for the purchase, JAA gave Rey LNU cash — approximately $10,000 to $20,000. [JAA] recalled that he did anticipate a profit above and beyond his investment. | Approximately one to two months later, JAA lent Rodriguez approximately $10,000 to $15,000, or possibly more, for the sale of Hallandale. During the purchase transaction, the business was put in the name of Rodriguez. At the meeting for the purchase, JAA invested cash — approximately $10,000 to $20,000. JAA recalled that he did anticipate a profit above and beyond his investment. |
| The profits of Hallandale were supposed to be split among JAA, Rey LNU, Rodriguez, Leandro, and a woman whose name he did not recall. | JAA understood that he and Rodriguez would each receive a portion of Hallandale's profits. |
| JAA only went to Hallandale's offices when Rey LNU or the woman whose name he could not recall sent him to pick up money. Leandro did not work at Hallandale either, but also received money. | JAA only went to Hallandale to pick up money. |
| JAA did not himself work at Hallandale or manage its day-to-day operations. Rey LNU and the woman whose name he could not recall ran Hallandale's day-to-day operations. | JAA did not himself work at Hallandale or manage its day-to-day operations. A woman whose name he could not recall was involved in those operations. |
| When it was shown to him, JAA did not remember check #1700 from South Florida Healthcare Connection, Inc.'s Wachovia Bank account ending in 6558, in the amount of $9,750, but he thought it was given to him by Gilberto LNU to deposit into his bank, then withdraw the money and give the cash to Rey LNU. | When it was shown to him, JAA did not remember check #1700 from South Florida Healthcare Connection, Inc.'s Wachovia Bank account ending in 6558, in the amount of $9,750, but he thought it was given to him by Gilberto LNU to deposit into his bank account, then withdraw cash. |
| JAA stated that, after he received checks in respect of the repayment of his loan to Rodriguez, all other monies from Hallandale, he received cash. | JAA stated that, after he received checks in respect of the repayment of his loan to Rodriguez, all other monies from Hallandale, he received in cash. |

D.E. 135-2 at 1-2.

On March 19, 2012, the Court held a hearing on Defendants' Motions. During the hearing,

-3-

counsel for Defendants contended that no redaction of Defendant Jose Antonio Acosta's statement could prevent incrimination of their clients. They agreed, however, that to the extent that the Court found that a redaction to Defendant Jose Antonio Acosta's statement satisfied the Sixth Amendment concerns, the Government's proposed redaction is fair.

## *II. Discussion*

As a general rule, "defendants indicted together should be tried together." *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998) (citation omitted). Courts have found this rule to be "particularly applicable to conspiracy cases," such as this one. *Id.* (citations omitted). As the Supreme Court has explained,

> Joint trials play a vital role in the criminal justice system . . . . Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability — advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts . . . .

*Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987).

Nevertheless, if a defendant can demonstrate that without severance, he will not be able to receive a fair trial, severance is warranted. *See Cassano*, 132 F.3d at 651. Here, Defendants complain that they will not be able to enjoy a fair trial if they are tried jointly with Defendant Jose Antonio Acosta, since Jose Antonio Acosta's incriminating statement will implicate them at trial, but they may not have the opportunity to cross-examine Jose Antonio Acosta because he is a co-defendant, so he has the right under the Fifth Amendment not to incriminate himself. As a result, Defendants contend, a joint trial will violate Defendants' rights under the Confrontation Clause of the Sixth Amendment.

"The Confrontation Clause of the Sixth Amendment . . . guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.'  The right of confrontation includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citation omitted).  Consequently, when two defendants are tried together, "the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Id.*

In considering what it means to admit evidence against a defendant, the Supreme Court has held that, as a general rule, in a joint trial, a witness against one defendant is not viewed as a witness against another defendant, as long as the court instructs the jury to consider the testimony against only the first defendant.  *Bruton v. United States*, 391 U.S. 123 (1968), however, represents a "narrow exception" to this rule.  *Id.* at 207.  Under *Bruton*, the introduction of the "facially incriminating confession" of a nontestifying codefendant jointly tried violates the Confrontation Clause, even if the jury is instructed to consider the confession against the codefendant only.  *Id.* In explaining this principle, the Supreme Court has reasoned,

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.  Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial . . . .

*Id.* (quoting *Bruton*, 391 U.S. at 135-36 (internal quotation marks and citations omitted)).

To qualify for the *Bruton* exception, a codefendant's out-of-court statement must be "facially incriminating." *United States v. Adams*, 74 F.3d 1093, 1099 (11th Cir. 1996).  Put simply, the statement must, standing alone, "directly" and "clearly" implicate the challenging defendant. *United States v. Beard*, 775 F.2d 1577, 1581 (11th Cir. 1985).  It is not enough for a statement to be

incriminating only upon linkage of that statement with other evidence presented at trial. *Adams*, 74 F.3d at 1099; *see also Richardson*, 481 U.S. at 208-09. Moreover, when a statement that otherwise would present a problem under *Bruton* can be and is "sanitized" by excising all direct or indirect references to the challenging defendant, that sanitized version of the statement may be admitted at a joint trial, as long as the Court instructs the jury that the statement may be considered against the uttering codefendant only. *See*, *e.g.*, *Richardson*, 481 U.S. 200.

Applying these principles to the instant matter, the Court concludes that introduction of the redacted version of Defendant Jose Antonio Acosta's statement would not require a severance of Defendants' trial from that of Jose Antonio Acosta, provided that the Court instructs the jury that Jose Antonio Acosta's statement may be considered against Jose Antonio Acosta only. Nothing in the redacted statement refers directly or indirectly to any of Defendants. Any incriminating value of the statement against Defendants arises only when the statement is linked with the expected testimony of other witnesses who are anticipated to testify that Defendants were also present at the meetings that Jose Antonio Acosta described in his statement. But, as explained above, incrimination solely from linkage does not suffice to create a Sixth Amendment violation. Nor, as Defendants suggest, does the law recognize any extension of the *Bruton* principle to a statement that incriminates a defendant only because of linkage where the defendant is related to the uttering codefendant. In short, binding Supreme Court and Eleventh Circuit precedent preclude this Court from finding that admission of the redacted version of Jose Antonio Acosta's statement in a joint trial involving Defendants would violate Defendants' Sixth Amendment Confrontation Clause

rights.[2]  As a result, severance is not appropriate.

### III.  Conclusion

For the foregoing reasons, Defendant Leandro Acosta's Motion to Sever [D.E. 125], Defendant Reyes's Motion to Sever [D.E. 129], and Defendant Yiriam Acosta's Motion to Adopt

---

[2]During the hearing on Defendants' Motion, the Government may have suggested that it intends to argue the inference that Defendants knew that they were involved in a fraud because, according to other evidence that the Government expects to introduce at trial, Defendants attended the same meetings as Jose Antonio Acosta, and Jose Antonio Acosta admitted his knowledge of the fraud.  Thus, if Jose Antonio Acosta knew of the fraud, Defendants must likewise have known of it.  If the Court correctly understood the Government to assert that it intended to proceed in this manner, such an argument appears to violate the Sixth Amendment.  In *Richardson*, the codefendant, who confessed to a murder and robbery, said in his statement that while he was in a car on the way to the site of the crime, he and another codefendant discussed the need to kill the victims.  The *Richardson* defendant testified that although she was also in the car, she did not hear this conversation because she was in the back seat.  In closing, although the prosecutor reminded the jury not to use the codefendant's confession against the defendant, he argued,

> It's important in light of [the defendant's] testimony when she says [the codefendant] drives over to [the other codefendant's] home and picks him up to go over.  What's the thing that she says? "Well, I'm sitting in the back seat of the car." "Did you hear any conversation what was going on in the front seat between [the codefendants]?" "No, I couldn't hear any conversation.  The radio was too loud." I ask[] you whether that is reasonable.  Why did she say that?  Why did she say she couldn't hear any conversation? She said, "I know they were having conversation but I couldn't hear it because of the radio." Because if she admits that she heard the conversation and she admits to the plan, she's guilty of at least armed robbery.  So she can't tell you that.

*Id.* at 205 n.2 (internal quotation marks omitted).  The Supreme Court described the prosecutor's words as "[seeking] to undo the effect of the limiting instruction by urging the jury to use [the codefendant's confession in evaluating [the defendant's] case" and further called the argument "error." *Id.* at 211.  This Court understands the Supreme Court's ruling in this regard to reconfirm the principle that a nontestifying codefendant's statement should not be used in any way against a defendant.  Consequently, if Jose Antonio Acosta does not testify, under no circumstances, should the Government ask the jury to consider Jose Antonio Acosta's statement as evidence against Defendants.

Co-defendant Leandro Acosta's Motion to Sever [D.E. 133] are **DENIED**.

**DONE AND ORDERED** this 22nd day of March 2012.

                                                          _____
                                                          ROBIN S. ROSENBAUM
                                                          UNITED STATES MAGISTRATE JUDGE

cc:    Hon. William J. Zloch
       Counsel of Record